# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.<br><br>Defendants. | Case: 1:20−mc−00023<br>Assigned To : Sullivan, Emmet G.<br>Assign. Date : 4/10/2020<br>Misc. No.:   Description: Misc.<br><br>[S.D.N.Y. Case No. 1:17-cv-00124-LLS]<br><br><br>**MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. CIV. P. 45** |

Plaintiff the Federal Trade Commission (FTC) moves pursuant to Federal Rule 45 to compel non-party Georgetown Economic Services, LLC ("GES"), to comply with a subpoena seeking documents relating to GES's data analyses of a study performed by Defendants in the above-captioned case filed in the United States District Court for the Southern District of New York.[1]  GES has refused to produce any documents, claiming through broad, boilerplate objections that the subpoena seeks documents protected by the attorney-client privilege, the work

---

[1] GES is a subsidiary of Kelley Drye & Warren LLP, the law firm representing the corporate Defendants in the Southern District of New York litigation.  GES, as a separate corporate entity, is a third party to the litigation.  Kelley Drye is counsel for GES with regard to the subpoena.



RECEIVED
APR 10 2020
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

product doctrine, and the protection afforded non-testifying experts.[2] GES's objections are meritless because Defendants have waived all privilege and protections by providing copies of GES's work to the FTC in the course of settlement discussions, by including the results of one analysis in a manuscript posted on Defendants' website, and by relying on that manuscript in their motion to dismiss Plaintiffs' complaint. Having used GES's work as a sword to better its position in this litigation, Defendants cannot now seek to shield it from the FTC on the grounds of privilege. The FTC is entitled to GES's analyses and, to prevent unfairness to the FTC, to all related documents in order to determine the accuracy of the results proffered by Defendants in this case.

## I.   FACTUAL BACKGROUND

### A.   Litigation

The FTC, together with its co-plaintiff the People of the State of New York by the Attorney General of the State of New York (NYAG) (collectively Plaintiffs), filed a Complaint on January 9, 2017 in the United States District Court for the Southern District of New York.[3] *See* Declaration of Michelle Rusk ("Rusk Decl.") at ¶ 2 and Complaint attached as Exhibit A thereto. The Complaint alleges that the above-captioned Defendants, Quincy Bioscience Holding Co., Inc. et al., have made false and unsubstantiated claims that Prevagen, a dietary supplement with the active ingredient apoaequorin, improves memory and provides other cognitive benefits. Complaint at ¶¶ 36-41; 44-45. The primary purported basis for these claims is a study, conducted by Quincy and known as the Madison Memory Study, in which subjects

---

[2] Although GES, rather than Defendants, asserted the objections, the FTC for purposes of this motion is treating the objections as if they had been made by Defendants.

[3] Although the NYAG is a co-plaintiff in the litigation against Quincy Bioscience Holding Co., Inc. and the other defendants, the FTC issued the subpoena to GES. The NYAG is not a party to this motion to compel.

who took either Prevagen or a placebo were tested on nine computerized cognitive tasks.  The Complaint alleges that, when this study failed to show a statistically significant difference between the treatment and placebo groups on any of the nine cognitive tests, Defendants proceeded to conduct more than 30 post hoc analyses on different subgroups of the study population in an attempt to find at least some positive findings on some cognitive tests.  *Id.* at ¶¶ 28-29.  The Complaint alleges that this methodology greatly increases the probability that some statistically significant differences might occur by chance alone, given the sheer number of post hoc analyses.  Even so, the vast majority of post hoc comparisons failed to show statistically significant differences between the treatment and placebo groups.  *Id.* at ¶ 29.  The Complaint asserts that the few positive findings on isolated tasks in the post hoc subgroup analyses do not provide reliable evidence of a treatment effect.  *Id.*  The Complaint states further that Defendants prominently featured the Madison Memory Study in their advertising for Prevagen.  *Id.* at ¶ 30.

      The FTC opened an investigation into the marketing of Prevagen in 2015 and obtained data regarding the Madison Memory Study from Defendants in response to a Civil Investigatory Demand served on Defendants that same year.  Rusk Decl. at ¶ 3.  In subsequent discussions prior to the filing of the joint Complaint with the NYAG, Plaintiffs raised multiple concerns about the Madison Memory Study, objecting to Defendants' selective reliance, after the fact, on only two subgroups with purported favorable results.  *Id.* at ¶ 4.  Plaintiffs pointed out that even those favorable post hoc subgroup analyses appeared to contain statistical errors.  *Id.*  In response, Defendants commissioned GES to conduct a new analysis of the Madison Memory Study data.  *Id.* at ¶ 5.  On April 22, 2016, Defendants provided Plaintiffs the GES re-analysis ("GES Re-Analysis") of the two post hoc subgroups.  *Id.*  The GES Re-Analysis also served as the basis for a revised August 1, 2016 manuscript of the Madison Memory Study (the "Lerner

Manuscript"), which was provided to Plaintiffs as an attachment to an October 17, 2016 letter. *See id.* at ¶ 6.

Defendants subsequently attached the Lerner Manuscript (containing the results of the GES Re-Analysis) to their April 6, 2017 Motion to Dismiss the Complaint and also posted it on the Prevagen website at https://www.prevagen.com/research/. *See id.* at ¶ 7 and Exhibit B thereto at 2. The Lerner Manuscript and the GES work described in that manuscript are thus a matter of public record in the case and publicly available on Defendants' website.

The Southern District of New York dismissed the complaint on September 28, 2017, but the Second Circuit reversed and remanded the case on February 21, 2019. *Id.* at ¶ 8. Following remand, Defendants presented to Plaintiffs yet another re-analysis performed by GES of the subgroup data from the Madison Memory Study. *Id.* at ¶ 9. For this re-analysis, GES applied a "Seemingly Unrelated Regressions" analysis, a methodology typically used in econometric research rather than human clinical research. Defendants presented the results of this econometric analysis ("GES SUR-Analysis") to bolster their defense that the Madison Memory Study results substantiated their marketing claims.

B.     GES Subpoena

The FTC's subpoena, served on GES's registered agent on December 11, 2019, commanded GES to produce the following documents, among others:

1.     All documents concerning the scope of work to be performed, services to be provided, or compensation to be provided for work performed by GES with regard to the Madison Memory Study.

2.     All documents concerning any statistical analysis of any data derived from the Madison Memory Study, including but not limited to any pretest analysis, intent-to-treat

analysis, within-group or between-group analysis, subgroup analysis, supra-group analysis, re-analysis, post-hoc analysis, or seemingly unrelated regression (SUR) analysis.

3. All documents related to the design, protocol, and recruitment of subjects for the Madison Memory Study, including but not limited to any documents evidencing any inclusion or exclusion criteria for participation in the study.

4. All communications with any outside entity or person concerning the Madison Memory Study (including but not limited to any analyses of results or data of such study).

5. All documents relating to any other human clinical study commenced, discontinued, or completed by or on behalf of any Defendant involving apoaequorin or any product containing apoaequorin, including but not limited to any analysis of any data or results from any such study.

*See* Rusk Decl. at ¶ 10 and Exhibit C thereto at Attachment A, at 1-4.

GES replied to the subpoena on December 26, 2019, stating that it would not be producing documents in response to any of the specifications. GES stated that:

> GES objects to the Subpoena, including the definitions contained therein, to the extent it seeks the production of materials protected by disclosure by the attorney-client privilege and the attorney work product doctrine including, but not limited to, protection under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure. GES was retained as a consulting expert in connection with an attempt to resolve this dispute with the FTC and is not expected at this time to be called as a witness in any trial of this action; therefore all documents and information in the possession of GES are protected from disclosure.

*See* Rusk Decl. at ¶ 11 and Exhibit D thereto at 1.

Neither GES nor Defendants produced a privilege log or any other description of the nature of the withheld documents. *Id.* at ¶ 12. The parties discussed the subpoena and GES's response on January 16, 2020 and conferred regarding the instant motion on April 2, 2020. *Id.* at

5

¶ 13. The parties have been unable to resolve their differences regarding the GES documents, and Defendants have indicated that they will oppose this motion. *Id.* at ¶ 14.

## II.   LEGAL STANDARDS

### A.  Motion to Compel

Rule 45 allows parties to seek relevant documents, electronically stored information, and tangible things in the possession, custody, or control of third parties.  Fed. R. Civ. P. 45(a)(1)(A)(ii).  When withholding subpoenaed information on the basis of privilege or work product protection, the recipient must:  (1) expressly make the claim; and (2) describe the nature of the material in a manner enabling the parties to assess the claim.  *Id.* at 45(e)(2)(A).  The rule also provides that, after providing notice to the subpoena recipient, the serving party may move to compel production.  *Id.* at 45(d)(2)(B)(i).  The person refusing production bears the burden to prove undue burden or that requested documents are privileged.  *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  Furthermore, "[t]he person objecting to production has a heavy burden to show that the subpoena should not be enforced."  *Id.* (quotation and citation omitted)

### B.  Waiver of Privilege and Protection

Attorney client privilege and work product protection, including the protections afforded non-testifying experts, are waived when a party affirmatively uses protected materials in a manner inconsistent with the purposes of the privilege, *e.g.*, by disclosing protected materials to an adversary or filing such materials in litigation.  *See In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. (1982) ("Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege.").  A party may waive attorney client privilege through selective disclosure and waive work product

protection by seeking "greater advantage from its control over work product than the law must provide to maintain a healthy adversary system." *Id.* *See also SEC v. Lavin*, 111 F.3d 921, 933 (D.C. Cir. 1997) ("The prohibition against selective disclosure of confidential materials derives from the appropriate concern that parties do not employ privileges both as a sword and shield.").

Parties thus waive privilege and protection when they disclose protected materials to adversaries in the course of settlement negotiations. *See In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988) (plaintiff waived work product protection by voluntarily disclosing material to adversaries during settlement negotiations); *In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988) (party waived privilege by disclosing privileged materials to government in course of settling charges in separate litigation); *Atari v. Sega of Am.*, 161 F.R.D. 417, 418-20 (N.D. Cal. 1984) (party waived all protection afforded to non-testifying experts by providing opposing party with material during settlement negotiations). *See also Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 67 (D.D.C. 1984) ("Voluntary disclosure to an adversary waives both the attorney-client and work-product privileges.").

Parties also waive privilege and protection, including that for consulting experts, when they make affirmative use of protected material in litigation, *e.g.*, by filing such material in relation to a dispositive motion. *See Zeiger v. WellPet LLC*, Case No. 17-cv-04056-WHO, 2018 WL 10151156, at *2-3 (N.D. Cal. Apr. 10, 2018) (finding that consulting expert protection was waived where party referenced testing results in complaint and relied on results in overcoming motion to dismiss). As the court explained in *Zeiger*, "[b]y injecting the lab results into the litigation in connection with a dispositive motion, [the plaintiff has] affirmatively used these materials against [the defendant] and cannot now claim the expert consulting privilege to shield

these same materials from discovery." *Id.* at *3. *See also In re Morning Song Bird Food Litig.*, Case No. 12cv1592 JAH(RBB), 2015 WL 12791470, at *7 (S.D. Cal. Jan. 23, 2015) (consulting expert protection for reports waived where defendants voluntarily disclosed the contents of the reports to authorities and attached a letter discussing and summarizing one report to their motion to dismiss); *Worley v. Avanquest North America Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at *4 (N.D. Cal. Dec. 13, 2013) (consulting expert privilege waived where plaintiff referenced results of experts' investigation in complaint and relied on results in opposing motion to dismiss; "if a party uses a consulting expert's statements, findings, or opinions in a filing, that party has put the expert's statements, findings, or opinions into the judicial arena and the opposing side may take discovery about those statements, findings, or opinions").

In addition, parties waive protection when making materials available to the public. *See In re Intel Corp. Microprocessor Litig.*, No. 05-441-JJF, 2008 WL 11233766, at *8-14 (D. Del. March 6, 2008) (party waived protection for non-testifying expert's report and underlying documents by disclosing report, expert's name, and report's key findings and methodology in press release).

C.  Scope of Waiver

Parties disclosing or relying on protected materials in the course of litigation may waive protection not only for the actual materials disclosed, but also for all communications and information related to the same subject matter. Federal Rule of Evidence 502 provides that when a disclosure of protected material has waived the attorney-client privilege or work-product doctrine, the waiver extends to undisclosed communications or information only if (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. Fed. R. Evid.

502(a).  Courts applying Rule 502 have found that such "subject matter waiver" is appropriate "as a matter of fairness where 'the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.'"  *US Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*, 274 F.R.D. 28, 32 (D.D.C. 2011) (quoting Charles A. Wright, 8 Fed. Prac. & Proc. § 2016.2 (3d ed., 2010 update)).  *See also Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 47 (D.D.C. 2009) ("The doctrine of subject matter waiver dictates that once a party waives privilege over a document, an adverse party may discover all documents and communications arising out of the same transaction. . . . Subject matter waiver prevents a party from selectively disclosing materials to confuse and mislead an adverse party."); *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 258-59 (D.D.C. 2004) (subject matter appropriate in case of disclosure and use of documents in a manner inconsistent with the purpose of the work product doctrine – the partial release of documents to gain a tactical advantage);[4] *City of Capitola v. Lexington Ins. Co.*, No. 12-3248 LHK (PSG), 2013 WL 1087491, at *1-2 (N.D. Cal. March 13, 2013) ("Courts are in accord that the attorney work-product privilege is not absolute and may be waived, for example, when an attorney attempts to use the work-product as testimony or evidence, or reveals it to an adversary to gain an advantage in litigation.  Waiver for the benefit of the party who owns the privilege precludes limiting the waiver to avoid disclosing disadvantageous information.") (quotation and citation omitted) (finding that fairness mandated subject matter waiver entitling defendant to

---

[4] Although *Bowles* pre-dates Rule 502, implementation of the rule in 2008 did "not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter, so that the information being used can be fairly considered in context." Fed. R. Evid. 502 Addendum to Advisory Comm. Notes.

entire investigatory file of plaintiff's expert consultant where plaintiff had disclosed to defendant only certain documents pertaining to consultant's analysis and conclusions in order to support its position).

### III. ARGUMENT

Defendants have waived all privilege and work product protection for both the GES Re-Analysis and the GES SUR-Analysis of subgroup data from the Madison Memory Study by disclosing those analyses during settlement negotiations and, in the case of the GES Re-Analysis, by attaching the results to a dispositive motion and publishing them on their website.[5] Furthermore, having used the GES analyses to gain an advantage in the case, Defendants have waived these protections for all documents related to the subject matter of the analyses and any related analyses of data from the Madison Memory Study or related research on Prevagen. Fundamental fairness mandates that Plaintiffs are entitled to these related documents to determine the scope and nature of GES's work regarding the Madison Memory Study data and ensure that Defendants have not selectively produced only GES's favorable analyses while withholding other contradictory analyses that might call into question Prevagen's efficacy.

### A. Waiver Through Disclosure in Settlement Discussions and Use in Litigation

As set forth above, Defendants provided the GES Re-Analysis and underlying data, as well as the GES SUR-Analysis, to Plaintiffs during settlement discussions. They disclosed the GES Re-Analysis, and referred to its findings in multiple letters, in an effort to convince

---

[5] Defendants in fact have failed to sustain their burden with regard to all of their objections, including those relating to undue burden, as they have not adduced any evidence in support thereof. *See In re Denture Cream Prods.*, 292 F.R.D. at 123 (burden is on party resisting discovery to establish undue burden and privilege); *Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C. 2000) (party objecting on the basis of undue burden "must make a specific, detailed showing of how the discovery request is burdensome"). Plaintiffs nonetheless address the merits of Defendants' objections on the basis of privilege and work product protection, as those objections appear to be the basis for GES's refusal to produce any documents.

Plaintiffs that the Madison Memory Study was a credible study demonstrating Prevagen's efficacy and that Plaintiffs thus should close their investigation. Additionally, following the Second Circuit's remand, Defendants provided Plaintiffs with the GES SUR-Analysis in an effort to convince Plaintiffs not to continue with the litigation. Providing these GES analyses to Plaintiffs during settlement talks is contrary to the purpose of privilege and protection and waives any such protections for these materials. *See In re Chrysler Motors Corp.*, 860 F.2d at 846 (plaintiff waived work product protection by voluntarily disclosing material to adversaries during settlement negotiations); *Atari*, 161 F.R.D. at 420 (finding that party waived all protection afforded to non-testifying experts by providing opposing party with material during settlement negotiations).

Defendants also waived all protection for the GES Re-Analysis results by including those results in a manuscript submitted with their motion to dismiss. Having used the GES Re-Analysis as a sword in such a manner, they cannot now seek to use privilege as a shield to prevent Plaintiffs from obtaining the requested documents. *See Zeiger*, 2018 WL 10151156, at *3 ("By injecting the lab results into the litigation in connection with a dispositive motion, [the plaintiff has] affirmatively used these materials against [the defendant] and cannot now claim the expert consulting privilege to shield these same materials from discovery."). The same principle mandates that Defendants waived protection for the GES Re-Analysis results by posting them on their website in an effort to bolster their claims regarding the efficacy of their product. *See In re Intel Corp.*, 2008 WL 11233766, at *9 (party claiming protection for report of non-testifying expert and underlying documents may not "hypocritically claim that they are confidential one moment and then so share such information with a host of others to be used for something other than litigation") (quote and internal edits omitted).

11

### B. Subject-Matter Waiver is Appropriate

Furthermore, fundamental fairness mandates that by seeking to use the GES analyses in this manner to further their position in this case, Defendants have waived protection for all documents relating to these and any other related analyses of the data. Such a result is necessary to prevent Defendants from selectively producing only positive findings of GES while shielding from discovery other results that "ought in fairness" to be considered as well to allow for a more accurate assessment of the Madison Memory Study results. The FTC cannot adequately assess GES's two post hoc re-analyses of the Madison Memory Study without underlying information about related work done by GES on this data or data from related studies of Prevagen. GES's reasoning for selecting a specific subgroup to analyze, whether GES ran analyses of other subgroups of the study population with different results, the justification for applying a non-traditional methodology to its second analysis, and whether GES did so only after traditional methodologies failed to yield the desired outcomes are all relevant to determining how to weigh the work GES chose to share with the FTC and the Court.

The court's holding in *US Airline Pilots Association* is instructive. In that case, the plaintiff alleged that the defendant had breached its duty as the trustee of a pension plan of which the plaintiff's members were beneficiaries. *US Airline Pilots Ass'n*, 274 F.R.D. at 29. The plaintiff moved to compel the deposition of defendant's in-house attorney who had conducted an investigation into the alleged misconduct and produced a report documenting her findings, which the defendant subsequently provided to the plaintiff. *Id.* When the plaintiff sought to depose the attorney regarding the substance and scope of her investigation, the defendant claimed that the investigation was protected by the work-product doctrine. *Id.* at 29-30. The plaintiff argued that the defendant's disclosure of the report waived work-product protection not only for the report

itself, but also for the investigation as a whole. *Id.* at 30. The plaintiff contended that subject matter waiver was appropriate because the defendant had made a tactical decision to disclose only favorable protected material. *Id.* The defendant, in the plaintiff's view, was attempting to use work product doctrine "as both a sword and shield" by relying on the report to show that it had not violated the law, yet preventing the plaintiff from questioning the attorney regarding the sufficiency of her efforts. *Id.* at 31.

The court found that the defendant's disclosure and use of the report resulted in a subject matter waiver of protection for the attorney's investigation and findings. *Id.* at 32-33. Analyzing the case under Federal Rule of Evidence 502, the court found that the defendant had intentionally waived work product protection for the attorney's report by deliberately disclosing it to the plaintiff. *Id.* at 31. The court then examined whether "the disclosed and undisclosed materials 'ought in fairness to be considered together.'" *Id.* (quoting Fed. R. Evid. 502(a)(3)). The court noted that the defendant had relied on the investigation throughout the course of the litigation, and had attached a copy of the attorney's report to its opposition to plaintiff's motion for a preliminary injunction. *Id.* at 32. The court ruled that, having made use of the report to benefit its position, the defendant could

> not now use the work-product privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the [r]eport. . . . When a party puts privileged material in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject.

*Id.* (internal quotes and citations omitted).

Accordingly, the court ruled that the plaintiff was entitled to question the attorney "regarding 'undisclosed communications or information concern[ing] the same subject matter' as the [r]eport." *Id.* at 32-33. Specifically, the court found that the "same subject matter" of the report

13

included:  "the scope and methods of the investigation; the documents reviewed; the efforts made to obtain more documents; the [pension plan's] investment policy; the [trust's] policies and procedures; and [the attorney's] findings."  *Id.* at 33.  The plaintiff thus was entitled to ask the attorney about the "scope, conduct, participants, and conclusions of the investigations" in which she had participated.  *Id.*

Defendants in the instant case have sought to use GES's work in the same manner as the defendants in *US Airline Pilots Ass'n*.  They deliberately disclosed two analyses conducted by GES and referred to them repeatedly in an effort to prove that their advertising claims were substantiated and that Plaintiffs should close their case.  In addition, Defendants affirmatively injected the results of the GES Re-Analysis into their advertising via their website and even into the litigation when they used those results to support their motion to dismiss.  Having used GES's work to support their case in this way, Defendants cannot now "invoke the privilege to deny [their] adversary access to additional materials that could provide an important context for proper understanding of the privileged materials."  *US Airline Pilots Ass'n*, 274 F.R.D. at 32 (quote omitted).

Without a complete picture of just how extensively GES mined the data from the Madison Memory Study in order to find some outcome that appeared to be favorable to Defendants' case, the FTC cannot adequately assess the validity of the results selectively shared by Defendants.  The more analyses performed by GES on the Madison Memory data, the greater the number of subgroups analyzed, and the more methods applied to interpret that data, the more likely it is that one or more results would appear to be statistically significant merely as a matter of chance.  In the case of the GES SUR-Analysis, Plaintiffs are entitled to know what considerations went into GES applying an econometric methodology rarely used for clinical

14

research, and whether GES applied more traditional methodologies that were not turned over because they yielded unfavorable results.  Finally, Plaintiffs should be given access to all work done by GES for Defendants, not just on the Madison Memory Study, but also on any other relevant studies of the product.  The Madison Memory Study cannot be fairly assessed in isolation, but must be considered in the context of all relevant scientific literature on Prevagen, both favorable and not.  Any work GES may have done to analyze the results of other clinical studies on Prevagen would have direct bearing on the weight of GES's work on the Madison Memory Study.

The FTC is entitled to a full picture of GES's work to assess the specific analyses that Defendants selectively shared.  All analyses, not just favorable ones, "ought in fairness" to be considered together to determine how much weight should be given to the Madison Memory Study – the single piece of evidence most central to this case.  *See* Fed. R. Evid. 502(a)(3).  The Court should reach the same result as in *US Airline Pilots Ass'n* and compel GES to turn over all communications and documents related to the GES work commissioned by Defendants as requested in the FTC's subpoena.

### IV. CONCLUSION

For the above reasons, the FTC respectfully requests that the Court grant its motion and compel GES to produce the requested documents.

Dated:  April 10, 2020                          FEDERAL TRADE COMMISSION
                                                       ALDEN F. ABBOTT
                                                       General Counsel

                                                       By:  /s/ Edward Glennon
                                                       Edward Glennon
                                                       Michelle Rusk
                                                       Annette Soberats
                                                       600 Pennsylvania Ave., N.W.

Maildrop CC-10528
Washington, D.C. 20580
eglennon@ftc.gov; mrusk@ftc.gov;
asoberats@ftc.gov
(202) 326-3126; -3148; -2921